# Baldwin-Lima-Hamilton Corporation Appeal

*Morley W. Baker* and *Edward R. Taylor*, for Commonwealth.

*John W. Wellman, Chadwick, Petrikin, Smithers & Ginsburg,* for appellant.

KREIDER, P. J., December 19, 1966. — This is an appeal filed by the Baldwin-Lima-Hamilton Corporation, a manufacturer of heavy machinery, from an order of the Bureau of Employment Security of the Pennsylvania Department of Labor and Industry denying appellant's petition for reassessment. The basis of the original assessment in the amount of $144, with interest of $23.04, was that certain amounts of money paid to persons by appellant in the operation of its business during the period in question should have been included in its contribution reports as "wages" paid for "employment" as defined by the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended, 43 PS §751 et seq.,

and, therefore, subject to tax. Although the remuneration in question was paid to more than one individual, appellant expressly waived its right to offer testimony before the hearing examiner regarding others similarly engaged. Consequently, this opinion, while dealing exclusively with the circumstances concerning Charles B. Spellman, controls the total assessment appealed to this court.

Spellman, whose remuneration for portions of January and February 1960 is in question, was employed by appellant as a hydraulic engineer from 1918 to 1959. On May 1, 1959, upon attaining age 65, he was retired on pension. In January 1960, he was allegedly engaged by appellant as a "consultant" engineer to perform services similar to those previously performed as an employe. He worked 24 days and was paid $1,200.

Appellant asserts that Spellman was not an employe during January and February 1960 but rather an independent contractor engaged by appellant as a "consultant engineer" and that the department has not established that Spellman performed services for wages. The hearing examiner found that appellant is an employer, that Spellman was in employment and that the remuneration paid to him represented "wages" within the meaning of the act. The relevant sections of the Pennsylvania Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended, §43 PS §751 et seq., are as follows:

Section 4(x):

" 'Wages' means all remuneration (including the cash value of mediums of payment other than cash), paid by an employer to an individual with respect to his employment . . ."

Section 4(j)(1):

"(1) 'Employer' means every — individual . . . who or which employed or employs any employe in employment subject to this act . . ."

Section 4(1)(1):

" 'Employment' means all personal service performed for remuneration by an individual under any contract of hire, express or implied, written or oral . . ."

The exclusionary provisions of section 4(1)(2) (B), provide, in pertinent part, as follows:

"Services performed by an individual for wages *shall be deemed to be employment* subject to this act, *unless and until it is shown* to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; *and* (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business".[1]

There is no question that Spellman performed services for appellant and received remuneration. Unless appellant can show that both requirements, viz., (a) and (b), of the above exclusionary exempting provisions are met, the remuneration paid will be considered "wages" subject to the act.

A recent discussion of the principles involved in the application of the act may be found in this court's opinion in Department of Labor & Industry v. Valley Forge Grinding Wheel Co., 83 Dauph. 322 (1965). In that case, we recognized the principle that the act's definition of "employment" extends beyond those considered employes or servants under common-law concepts. Since Spellman was performing services for remuneration, *the burden shifts to appellant* to bring itself within either the general exception set forth in section 4(1)(2)(B) or one of the special exclusions of section 4(1)(4). As stated, the taxpayer must

---

[1] Emphasis throughout ours unless otherwise noted.

satisfy both clauses (a) and (b) to exclude itself from coverage under the general exception of section 4(1) (2)(B) : Commonwealth of Pennsylvania, Bureau of Employment Security v. Hecker & Co., 409 Pa. 117, 121, 122 (1962), affirming the opinion of this court, 78 Dauph. 354 (1962).

To determine whether Spellman was an employe within the meaning of the act or an independent consultant engineer as contended by appellant, we must examine both the oral employment contract and the circumstances surrounding Spellman's performance of services. For appellant to have been exempt from unemployment tax on wages paid, Spellman must have been free from control or direction of the performance of his services both under the oral contract *and in fact.* It is immaterial whether any control over the performance of Spellman's services was actually exercised. *The mere right to exercise such control prevents an individual's remuneration from qualifying* under the exclusionary provisions of section 4(1) (2) (B) (a). See Department of Labor & Industry v. Valley Forge Grinding Wheel Co., supra, 83 Dauph. 322, 327.

We turn first to the terms of the oral contract as it could reasonably be interpreted by the parties. The only terms discussed were the $50 per day payment, the lack of usual employe benefits, and the fact that Spellman's duties would be similar to his previous employment. However, Spellman testified that he believed certain other conditions were imposed upon him. The record shows that appellant engaged Spellman because it had more specific jobs to be performed in a short period of time than could be done by appellant's regular staff.

No specific agreement was reached regarding either hours or days of work. However, Spellman testified that because of the specific emergency nature of the

work, he felt he would not have been engaged if he did not plan to put in a certain number of hours every day to work steadily until completion of the project for which he was engaged. In fact, Spellman did complete this project and worked on four others until he voluntarily terminated his engagement because he had earned $1,200, the maximum amount he could receive without losing his Social Security payments. Spellman testified:

"It was just agreed to that I would come in and help out on the work, and I understood that they expected me to come in at the usual time, five days a week, so I did".

Spellman also testified that he felt bound to give appellant a full day's work for his daily compensation and was, therefore, expected to and did work the usual eight hours beginning at 8:30 a. m. Although it is true, as appellant contends, that the agreement did not require Spellman to do his work in appellant's plant, nevertheless his work was most conveniently done where he had access to the information necessary to compute bids on his assigned projects. The record shows that the very nature of the work required his presence at the plant for all practical purposes. We believe that the hearing examiner was correct in concluding that the oral contract implied conditions of control not expressed by the parties and that Spellman was not free from control or direction over the performance of his services.

We now turn to the direction of performance of the specific projects given to Spellman. The evidence shows that Mr. Willi, the department head, hired Spellman. Although Spellman was performing the same task in the same manner as before his retirement, he was now responsible to Mr. Willi rather than to his immediate supervisor as theretofore. Appellant contends this indicates that no control existed as to the manner of

performance of Spellman's work. Mr. Willi testified that he merely gave Spellman the job and made whatever comments were necessary to enable him to carry it out, Spellman being free to do so in any manner which he deemed fit.

Contrary to this testimony, however, it appears from the whole record that Spellman was not free to do as he pleased but rather was expected to execute his tasks in the same manner as he had done during his previous employment. Mr. Willi testified that since Spellman was an experienced engineer, it was necessary to give him only general instructions and because of Spellman's knowledge of the methods and procedures used by appellant in drawing up bids on hydraulic turbine equipment, detailed instructions were unnecessary. The fact that these instructions were never given, however, does not indicate that the right to direct Spellman in the performance of his duties did not, in fact, exist. We believe actual direction was implied and that the right to further instruct Spellman, if such direction was necessary, was present.

Appellant further contends that Spellman is not an employe within the meaning of the act because it did not regard Spellman as a normal employe. It stresses the fact that he did not execute the usual employment application or have the usual preemployment physical examination; that Social Security and Federal income taxes were not withheld from his compensation; that he was not entitled to such employe benefits as group insurance, hospitalization, workmen's compensation, unemployment compensation, paid vacation and sick leave; that he was not paid on a regular basis but only upon his own request when he submitted an invoice to Mr. Willi, who would forward it to the accounting department for payment; that he reported his income for Federal tax purposes as a selfemployed individual; that he was retained by the manager of the turbine

engineering department, it being the custom for consultants to be retained by department heads rather than through the employment office; and finally, that he held himself out as a consultant and inquired on several occasions if there was work available.

While Spellman may not have been hired in the same manner usually adopted by appellant in hiring other employes, this does not prevent him from being considered an employe within the meaning of the act. The question does not turn on the way in which appellant or Spellman regarded their relationship but on all the facts and circumstances of the case, regardless of the interpretations appellant chooses to place on them. As this court said in the Valley Forge Grinding Wheel case, supra, at page 328, quoting from Feller v. New Amsterdam Casualty Co. 363 Pa. 483, 489 (1950):

"Defendant makes much of the fact that plaintiffs filed no reports, so far as Van Tassell was concerned, of social security, federal income, or city wage taxes, nor made any deductions of such taxes from his compensation; it is urged that this indicates that plaintiffs did not regard him as being their employee. To this contention it may be answered, in the first place, that the determining factor is not the way in which plaintiffs or Van Tassell may have regarded their relationship but what it really was under the facts and the applicable rules of law: See Magarian v. Southern Fruit Distributors, 146 Fla. 773, 778, 1 So. 2d 858, 862; 27 Am. Jur. p. 503, §23 . . ."

It is significant that Spellman considered himself an employe of the appellant—Baldwin Company. On cross-examination by the latter's counsel he testified (Record p. 59):

"Q. Do you believe that you were an employee of the Baldwin-Lima-Hamilton Corporation during January and February, 1960, rather than a

consultant engineer?

"A. Yes, I do, I believe that I was put into the category of consultant engineer mainly for the convenience of the corporation, to prevent the necessity of applications, indoctrinations and examinations.

"Q. You thought you were an employe?

"A. I felt that I was, yes".

Spellman further testified that after the period in question (January-February 1960) he collected Unemployment Compensation and that he named the appellant-Baldwin as his employer. He stated: "I filed again in May of 1960 and collected another 30 weeks". (Record p. 56.)

The appellant also fails to meet the test required in Clause (b) of Section 4 (1) 2 (b) of the Unemployment Compensation Law, supra, because it has not shown that Spellman during January and February 1960 was a consultant engineer "customarily engaged in an independently established trade, occupation, profession or business." The Hearing Examiner found from the evidence that Spellman was not so engaged "either during his short stay with the petitioner (appellant) or at any time since retirement to the date of this hearing."

The evidence disclosed that during the time in question Spellman did not attempt to obtain employment as a "consultant turbine engineer" with any other company, although the Allis-Chalmers Company was engaged in similar activities at York, Pa. He did not advertise himself as a consultant engineer nor did his name appear on any stationery or cards in that capacity. The evidence on this point leads to the conclusion that he was not and did not claim to be "customarily engaged in an independently established trade, occupation, profession or business". Therefore, appellant

has failed to meet the said clause (b) test required of those claiming exemptions from the tax.

ORDER

And now, December 19, 1966, the appeal of Baldwin-Lima-Hamilton Corporation is dismissed and the determination of the Department of Labor and Industry that, during the 24-day period in question, Charles B. Spellman was in the employment of appellant, Baldwin-Lima-Hamilton Corporation, within the meaning of the Unemployment Compensation Law is sustained.